UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x

GLOBAL WEATHER PRODUCTIONS LLC,          :

                          Plaintiff,          :

            - against -          :

REUTERS NEWS & MEDIA, INC., and          :
THOMSON REUTERS US LLC,          :

                   Defendants.          :

--------------------------------------------------------------- x

Case No. 24-cv-507 (AS)

## PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, Plaintiff Global Weather Productions LLC ("*Plaintiff*" or "*GWP*"), respectfully submits this response to Defendants Reuters News & Media Inc. ("*RNMI*") and Thomson Reuters U.S. LLC ("*TRUSL*") (collectively, "*Defendants*") Rule 56.1 Statement (*Dkt No. 59*) in connection with Plaintiff's opposition to Defendants' motion for partial summary judgment.

**The Parties and Related Entities**

**Defendants**

1.      RNMI is a multimedia news agency and wire service. Ex. 45 (Flatley Dep.) at 17:6–10, 18:12–19:17.[1]

        **PLAINTIFF'S RESPONSE:** Undisputed.

2.      RNMI operates reuters.com, where it publishes original news reporting for consumer use. Ex. 45 (Flatley Dep.) at 18:12–20, 19:6–11.

---

[1] Citations to "Ex. __" are to exhibits annexed to the Declaration of Jeremy A. Chase.

**PLAINTIFF'S RESPONSE:** Undisputed.

3.      RNMI operates the Reuters Connect platform, where subscribers (*e.g.*, other news outlets, not consumers) can download content provided by RNMI and its contracted contributors for their own news reporting around the world. Ex. 45 (Flatley Dep.) at 18:21–19:5, 19:12–17, 21:22–22:14.

**PLAINTIFF'S RESPONSE:** Undisputed.

4.      RNMI offers its subscribers two primary subscription models. First, RNMI offers "all you can eat" subscriptions under which the subscriber can download RNMI's content from the Reuters Connect platform without further charge for any individual piece of content and/or can receive all content that RNMI publishes via a given automated feed. Second, RNMI offers "points" subscriptions under which the subscriber can purchase a quantity of points in advance and redeem the points for downloads of RNMI or contributor content from the Reuters Connect platform. Ex. 45 (Flatley Dep.) at 51:21–52:21, 92:15–93:2, 96:22–97:7, 101:18–102:6.

**PLAINTIFF'S RESPONSE:** Undisputed.

5.      TRUSL is RNMI's parent company. Ex. 45 (Flatley Dep.) at 19:18–20:8; Lee Decl. ¶ 3.

**PLAINTIFF'S RESPONSE:** Undisputed.

**Stringr, Inc.**

6.      Non-party Stringr, Inc. ("Stringr") operates a video newsgathering platform founded in 2013. Ex. 47 (Stewart Dep.) at 15:2–14, 16:9–17:3.

**PLAINTIFF'S RESPONSE:** Undisputed.

7.      Stringr has a network of videographers who supply videos to Stringr, which then licenses those videos to news outlets. Ex. 47 (Stewart Dep.) at 16:9–17:18.

**PLAINTIFF'S RESPONSE:** Undisputed.

8.    Through Stringr's videographer network, news outlets like RNMI can obtain video coverage of newsworthy events across the United States, especially in areas where Reuters journalists may not be available. Ex. 45 (Flatley Dep.) at 34:4–13.

**PLAINTIFF'S RESPONSE:** Undisputed.

**Latin America News Agency**

9.    Non-party Latin America News Agency ("LANA") is a contributor to the Reuters Connect platform. Ex. 45 (Flatley Dep.) at 48:14–15.

**PLAINTIFF'S RESPONSE:** Undisputed.

10.    A contributor like LANA delivers content directly to the Reuters Connect platform, without any editorial involvement from RNMI, which is made available only to customers with points subscriptions. (In contrast, a partner, such as Stringr, supplies content that RNMI can then chose to include in its own news-related products, content, or wires.) Ex. 45 (Flatley Dep.) at 28:16–22, 96:22–97:7, 111:20–25.

> **PLAINTIFF'S RESPONSE:** Disputed, as to "without any editorial involvement from RNMI" as RNMI's Partnership Director, Justine Flatley, testified that Reuters did provide a disclaimer on the content LANA directly delivered to the Reuters Connect platform (see *Dkt. No*. 61-45, at 69:16-70:11). Therefore, it is disputed that Reuters had no editorial review or involvement with the content provided by LANA.

**Plaintiff and Related Entities**

11.    Plaintiff Global Weather Productions LLC ("Global Weather") is a Wyoming Close Limited Liability Company formed in May 2023. Ex. 30 at PLA000524.

**PLAINTIFF'S RESPONSE:** Undisputed.

12.    Michael Brandon Clement, as Plaintiff's corporate representative, testified that he founded Global Weather for the purpose of holding copyrights in the video footage he shot. Ex. 48 (Clement Dep.) at 118:19–119:18.

**PLAINTIFF'S RESPONSE:** Undisputed.

13.    In June 2023, Clement assigned to Global Weather the copyrights to all of his then-existing and future copyrighted works. This assignment included the seven videos at issue in this case. Ex. 31 at PLA000021, § 1; Ex. 48 (Clement Dep.) at 131:12–132:12.

**PLAINTIFF'S RESPONSE:** Disputed insofar as Paragraph 13 does not recite the entirety of the rights assigned by Clement to Global Weather. Paragraph 1 of the Assignment (*Dkt. No*. 61-31 at PLA000021) states that in addition to the "rights, titles and interests to all intellectual property", Clement also assigned to Global Weather "all causes of action accruing or occurring before or during the term of this Agreement, including the right to receive and retain any proceeds related thereto."

14.    Any and all licensing of Clement's or Global Weather's works is handled by either WxChasing LLC ("WxChasing"), a Mississippi LLC Clement founded in 2018, or a licensing agent called Live Storms Media. Ex. 48 (Clement Dep.) at 111:6–19, 119:19–20, 129:11–130:3; Ex. 29 (WxChasing 2022 LLC Annual Report).

**PLAINTIFF'S RESPONSE:** Disputed as to "any and all licensing of Clement's or Global Weather's works is handled by either" WxChasing or Lives Storms Media. When asked "in that November/December, 2022 time frame how did customers know where to find your work to license it", Clement testified "I have been long working through Media Ellis, I display my own work on social media

4

platforms, I also display the work through Live Storms Media, CDN, their portal which also e-mail blasts out to hundreds of clients globally." *Dkt. No.* 61-48 (Clement Dep.) at 16:13-21.

## RNMI's Contracts and Related Agreements

### The Provider Agreement with Stringr

15.     RNMI and Stringr entered into a Provider Agreement, effective April 1, 2021 and continuing through December 31, 2021. Ex. 1 at REUTERS000010, § 2(a).

**PLAINTIFF'S RESPONSE:** Undisputed.

16.     Under the Provider Agreement, in connection with the videos on its platform, Stringr represented and warranted that:

> (a) Stringr owns the copyright in the Videos … or has obtained all rights necessary in the Videos to enter into this agreement; (b) none of the Videos, the content thereof, nor the manner in which they were obtained violates any law or the rights of any third party; (c) the Videos are and will be, to the best of your knowledge, accurate and truthful portrayals of the events portrayed therein, and that none of your research or newsgathering for the content will have involved the breach of any laws or violation of the rights of any third party.

Ex. 1 at REUTERS000011–12, § 8.

**PLAINTIFF'S RESPONSE:** Undisputed.

17.     Under the Provider Agreement, Stringr granted RNMI a broad license to use the videos on its platform, including:

> the worldwide, perpetual right to publish, republish, edit, revise, abridge, translate, prepare derivative works of and utilize discrete elements (such as the audio track or still photographs) of the Videos, and to license or otherwise commercially exploit the Videos or assign any such rights for a fee to any third party, in any form throughout the world, in all languages and in all media.

Ex. 1 at REUTERS000011, § 6.

**PLAINTIFF'S RESPONSE:** Undisputed.

18.    Under the Provider Agreement, Stringr agreed to indemnify RNMI for claims arising out of the videos on the Stringr platform. Specifically, Stringr agreed to:

> indemnify, defend and hold harmless REUTERS, and their respective officers, directors, employees, representatives, partners and assigns from and against any and all losses, claims, damages, liabilities, costs and expenses (including reasonable attorneys' fees) brought by a third party arising out of or related to: (a) the Platform and/or the Videos, including any allegation that the Platform and/or Videos violate any law or infringe any Intellectual Property Right or any other right of a third party; or (b) Stringr's breach of any of its representations or warranties contained herein.

Ex. 1 at REUTERS000015, § 19.

   **PLAINTIFF'S RESPONSE:** Undisputed.

19.    Under the Provider Agreement, RNMI paid Stringr an upfront fee for a certain number of credits to access Stringr's platform and download licensed content at rates specified in Exhibit A attached to the Agreement. Ex. 1 at REUTERS000011, § 4, REUTERS000017.

   **PLAINTIFF'S RESPONSE:** Undisputed.

20.    Effective December 1, 2021, RNMI and Stringr entered into an Amendment to Provider Agreement, amending Section 2a of the original Provider Agreement to extend the term of the Agreement from December 1, 2021 to November 30, 2023. Ex. 2 (REUTERS000018) § 1.

   **PLAINTIFF'S RESPONSE:** Undisputed

21.    The Amended Provider Agreement also amended Section 4 of the original Provider Agreement, whereby RNMI paid Stringr an additional upfront fee for additional credits to access Stringr's platform and download licensed content pursuant to the same rate structure specified in Exhibit A attached to the original Agreement. Ex. 2 (REUTERS000018) § 2; Ex. 1 at REUTERS000017.

   **PLAINTIFF'S RESPONSE:** Undisputed

22.     The Amended Provider Agreement also provided, in relevant part, that "[a]ll other provisions of the Agreement are unchanged and shall remain in full force and effect," meaning that Stringr's representations and warranties in Section 8, the license granted in Section 6, and the indemnification provision in Section 19 of the original Provider Agreement, among others, all remained in full force and effect. Ex. 2 (REUTERS000018) § 3; Ex. 1 at REUTERS000011, § 6, REUTERS000011–12, § 8, REUTERS000015, § 19.

**PLAINTIFF'S RESPONSE:** Undisputed

**Stringr's Agreements with Videographers**

23.     As a prerequisite to joining Stringr's videographer network and submitting videos for distribution to Stringr's clients, videographers must agree to certain terms, including Stringr's Terms of Use and Contributor Agreement. Ex. 3 at REUTERS000297; Ex. 4 at REUTERS000308; Ex. 47 (Stewart Dep.) at 20:24–21:9, 70:24–71:2, 123:16–125:6.

> **PLAINTIFF'S RESPONSE:** Disputed insofar as Lindsay Stewart, CEO of Stringr, Inc. testified that Mark Morgan, the videographer who submitted the infringing videos to Stringr, would have agreed to Stringr's terms of service and privacy policy upon registering through Stringr's mobile app. She does not mention a Contributor Agreement. Ms. Stewart also confirms there would be no signed agreement with Mr. Morgan. *Dkt. No.* 61-47 (Stewart Dep.) at 20:22–21:9, 70:21–71:2. Further, the Contributor Agreement (*Dkt. No.* 61-4 at REUTERS000308) states:
>
> "PLEASE READ THIS AGREEMENT CAREFULLY. BY CLICKING "I ACCEPT" OR OTHERWISE SIGNIFYING YOUR ACCEPTANCE TO THIS AGREEMENT, OR BY UPLOADING, SUBMITTING OR OTHERWISE PROVIDING CONTRIBUTOR CONTENT TO THE SERVICE, YOU ARE AGREEING TO BE LEGALLY BOUND BY THIS AGREEMENT, WHICH MAY BE UPDATED FROM TIME TO TIME AS DESCRIBED IN SECTION 10.C BELOW, AND WHICH INCORPORATES

BY REFERENCE THE STRINGR TERMS OF SERVICE AND PRIVACY POLICY."

However, Defendants proffered no documents to support whether the Contributor Agreement is actually provided to a videographer. Defendants solely produced screenshots of the Stringr app registration screens which appear to display a pop up clickwrap agreement stating "Agree to Terms and Conditions" and "Please review and agree to the terms and conditions" with a choice to click "OK" or "VIEW TERMS". See document produced as REUTERS000382 (annexed to the accompanying Declaration of Renee J. Aragona ("Aragona Dec.") as Exhibit C). Further, Mr. Morgan testified that he did not remember reading or agreeing to any terms or user representations through the Stringr app. Deposition of Mark Morgan ("Morgan Dep.") at 84:23-85:15, 86:2--14, 87:4-88:24 (annexed to the Aragona Dec. as Exhibit A).

24.     Under Stringr's Terms of Use, videographers represent and warrant that:

The creation, distribution, transmission, public display, or performance, and the accessing, downloading, or copying of [their] Contributions do not and will not infringe the proprietary rights, including but not limited to the copyright, patent, trademark, trade secret, or moral rights of any third party.

[They] are the creator and owner of or have the necessary licenses, rights, consents, releases, and permissions to use and to authorize [Stringr], the Site, and other users of the Site to use [their] Contributions in any manner contemplated by the Site and these Terms of Use.

Ex. 3 at REUTERS000300, ¶¶ 1–2.

PLAINTIFF'S RESPONSE: Disputed insofar as the referenced section is titled "User Generated Contributions" and does not specify videographer representations and warranties. *Dkt. No*. 61-3 at REUTERS000299-REUTERS000300.

25.     Under Stringr's Contributor Agreement, videographers represent and warrant that:

[They] are the creator and owner of, or have the necessary licenses, rights, consents, and permissions, to use and to authorize Stringr and its Customers to use and distribute [their] Contributor Content as necessary to exercise the licenses granted by [them to Stringr and its sublicensees] and in the manner contemplated by the Service ….

[Their] Contributor Content, and the use of [their] Contributor Content as contemplated by this Agreement, does not and will not: (i) infringe, violate, or misappropriate any third-party right, including any copyright, trademark, patent, trade secret, moral right, privacy right, right of publicity, or any other intellectual property or proprietary right; (ii) slander, defame, libel, or invade the right of privacy, publicity or other property rights of any other person; or (iii) cause Stringr to violate any law or regulation ….

Ex. 4 at REUTERS000318, § 4(A)(ii)–(B).

> **PLAINTIFF'S RESPONSE:** Disputed insofar as the referenced section relates to representation and warranties as to Contributor Content and does not specify videographer representations and warranties. *Dkt. No*. 61-4 at REUTERS000318. Further Defendants proffered no documents to support when or whether the Contributor Agreement is actually provided to a videographer.

**The Contributor Agreement with LANA**

26.    Effective September 11, 2019, La Ley Sociedad Anonima Editora E Impresora (an RNMI affiliate) entered into a Contributor Agreement with LANA. Ex. 9 at REUTERS000001.

> **PLAINTIFF'S RESPONSE:** Disputed insofar as the Reuters Connect Contributor Agreement with LANA refers to La Ley Sociedad Anonima Editora E Impresora ("La Ley") generally as "Reuters", and not RNMI. RNMI is not named in the agreement and Defendants proffered no documents to support which Reuters groups La Ley is or is not an affiliate of. *Dkt. No*. 61-9 at REUTERS000001. The agreement does specifically reference Thomson Reuters. *Dkt. No*. 61-9 at REUTERS000003, § 8 and REUTERS000005, § 19.

27.     Under the Contributor Agreement, in connection with any content it supplied to

Reuters Connect, LANA represented and warranted that:

> [LANA] own[s] or otherwise ha[s] all rights necessary to provide [its] Content …
> to Reuters and to grant to [Reuters] the rights granted herein … ; [LANA's] Content
> is accurate at the time of submission to [Reuters Connect] … ; [LANA's] Content
> … [is] free and clear of any encumbrances or other rights inconsistent with the
> licenses granted under this Agreement; and [LANA] will comply with applicable
> laws and regulations in creating, acquiring and providing [its] Content.

Ex. 9 at REUTERS000004, § 12.

**PLAINTIFF'S RESPONSE:** Undisputed.

28.     Under the Contributor Agreement, LANA granted RNMI and its affiliates a broad

license to LANA's uploaded content, including:

> a worldwide, nonexclusive license … to: (a) use, store, reproduce, display, package,
> process, perform and otherwise make available [LANA's] Content through
> [Reuters Connect]; (b) sublicense to Visitors and Clients the right to access and
> view [LANA's] Content through [Reuters Connect]; (c) sublicense to Clients the
> right to download [LANA's] Content from [Reuters Connect]; and (d) sublicense
> to Clients the right to use [LANA's] Content on their respective Client Properties.

Ex. 9 at REUTERS000001, § 2.1, REUTERS000004, § 11.

**PLAINTIFF'S RESPONSE:** Disputed as to "RNMI" which is not referenced in

the agreement, but rather LANA granted the referenced license to "Reuters," and

"Reuters Group" as defined. *Dkt. No.* 61-9 at REUTERS000001, § 1.14 and 2.1,

and REUTERS000004, § 11.

29.     Under the Contributor Agreement, LANA agreed to indemnify RNMI and its

affiliates for claims arising out of LANA's uploaded content. Specifically, LANA agreed to:

> defend, indemnify and hold each Reuters Party and their licensees (including
> Clients) harmless from and against all liabilities, damages, judgments, awards,
> losses, costs, expenses and fees (including reasonable attorneys' fees) ("Losses")
> arising out of any third-party claim in connection with: (a) [LANA's] Content … ;
> or (b) any breach of this Agreement by [LANA].

Ex. 9 at REUTERS000004, § 14.1.

**PLAINTIFF'S RESPONSE:** Disputed as § 14.1 of the agreement indemnifies "each Reuters Party" and not RNMI.

**The December 2022 Blizzard**

**The RNMI Video Edits**

30.     In late December 2022, Winter Storm Elliot caused blizzard conditions in Western New York. Ex. 12 at REUTERS000273.

**PLAINTIFF'S RESPONSE:** Undisputed.

31.     The snowstorm began on December 23, 2022 and continued through December 26, 2022. Ex. 48 (Clement Dep.) at 76:10–77:19.

**PLAINTIFF'S RESPONSE:** Undisputed.

32.     RNMI's video producers were instructed to watch the Stringr platform for footage of the storm for potential use. Ex. 12 at REUTERS000274; Ex. 44 (Eiras Dep.) at 55:2–56:8.

**PLAINTIFF'S RESPONSE:** Disputed as to "RNMI's video producers." Scott Dill, a prior employee, testified that his last place of employment was Reuters as a news producer, not RNMI. *Dkt. No.* 61-43 (Dill Dep.) at 15:15–13:10. Arlene Eiras testified that she is employed by Thomson Reuters. *Dkt. No.* 61-44 (Eiras Dep.) at 12:17–13:10. Mr. Dill's email address is listed as Scott.Dill@thomsonreuters.com and Ms. Eiras' email addresses is listed as Arlene.Eiras@thomsonreuters.com. *Dkt. No.* 61-12 at REUTERS000273.

33.     On December 25, 2022, at 8:56 p.m., a Western New York–based videographer named Mark Morgan uploaded to the Stringr platform six videos of a snowstorm. Ex. 5 (REUTERS000349–376); Ex. 47 (Stewart Dep.) at 46:19–48:9.

**PLAINTIFF'S RESPONSE:** Undisputed.

34.     Morgan titled the videos "Winter Storm Elliot Hits Buffalo NY 2022" and described them as "a few short clips I was able to get while in Buffalo on Friday before I got stuck in a parking lot over night." Ex. 5 (REUTERS000349–376); Ex. 47 (Stewart Dep.) at 48:10–22.

**PLAINTIFF'S RESPONSE:** Undisputed.

35.     Morgan uploaded the videos to the Stringr platform from an address in Fairport in Western New York. Ex. 5 (REUTERS000349–376); Ex. 47 (Stewart Dep.) at 46:19–48:9.

**PLAINTIFF'S RESPONSE:** Undisputed

36.     An RNMI video producer named Scott Dill accessed Morgan's videos via the Stringr platform and used those videos to cut a video edit of the storm. Ex. 43 (Dill Dep.) at 13:22–14:5, 61:13–20; Ex. 13 (REUTERS000019).

> **PLAINTIFF'S RESPONSE:** Disputed as to "RNMI video producer." Mr. Dill testified that his last place of employment was Reuters, not RNMI. *Dkt. No*. 61-43 (Dill Dep.) at 15:15–13:10. Mr. Dill's email address is listed as Scott.Dill@thomsonreuters.com. *Dkt. No*. 61-12 at REUTERS000273.

37.     On December 26, 2022, that video edit was published on Reuters Connect with the title "Traffic chaos as historic snowfall blankets New York." Ex. 19 at PLA000857–861; Ex. 12 at REUTERS000273–74; Ex. 43 (Dill Dep.) at 53:3–54:14, 79:3–21.

**PLAINTIFF'S RESPONSE:** Undisputed.

38.     That video edit was also later published on reuters.com to accompany a news article titled "'Once-in-a-lifetime' blizzard kills at least 27 in western New York" and a video page titled "Traffic chaos as snowfall blankets New York." Ex. 19 at PLA000847–856.

> **PLAINTIFF'S RESPONSE:** Disputed as the video edit produced by Arlene Eiras is titled "'Once-in-a-lifetime' blizzard kills at least 60 people nationwide" and

contains the same video clips as the news article on reuters.com similarly titled "'Once-in-a-lifetime' blizzard kills at least 27 in western New York". Compare *Dkt*. 61-14, Defendants' Exhibit 14 video edit published on December 27, 2022, entitled "'Once-in-a-lifetime' blizzard kills at least 60 people nationwide," produced as REUTERS000093, and *Dkt*. 61-19 at PLA000847–856; screenshots from Exhibit 2 of the Amended Complaint of the reuters.com article also dated December 27, 2022. Therefore, whether the Defendants' "Traffic Chaos" video edit was used on reuters.com is disputed.

39.    Another RNMI video producer named Arlene Eiras also used the same Stringr videos, together with videos from other sources, to cut another video edit. Ex. 44 (Eiras Dep.) at 25:9–17; Ex. 14 (REUTERS000093).

> **PLAINTIFF'S RESPONSE:** Disputed as to "RNMI video producer." Arlene Eiras testified that she is employed by Thomson Reuters, or Reuters, not RNMI. *Dkt. No*. 61-44 (Eiras Dep.) at 12:17–13:10. Ms. Eiras' email addresses is listed as Arlene.Eiras@thomsonreuters.com. *Dkt. No*. 61-12 at REUTERS000273.

40.    Two-and-a-half minutes of Eiras' approximately five-minute video edit contains footage that is not owned by Plaintiff and is not at issue in this case. Ex. 14 (REUTERS000093) at 2:37–5:07.

**PLAINTIFF'S RESPONSE:** Undisputed.

41.    On December 27, 2022, this second video edit was published on Reuters Connect with the title "'Once-in-a-lifetime' blizzard kills at least 60 people nationwide." Ex. 19 at PLA000866.

**PLAINTIFF'S RESPONSE:** Undisputed.

42.    The two RNMI video edits (or links to those edits) were distributed to hundreds of RNMI's customers via download from the Reuters Connect marketplace or via automated feed. Ex. 16 (REUTERS000092); Ex. 17 (REUTERS000094); Ex. 18 (REUTERS000278–285); Ex. 60 (Resp. to Interrog. No. 23) at 10–11.

> **PLAINTIFF'S RESPONSE:** Disputed as to "RNMI video edits" and "RNMI's customers". The screenshots of the reutersconnect.com platform displaying the video edits list Thomson Reuters as the owner of the Story Copyright. *Dkt. No*. 61-19 at PLA000856-PLA000861. In addition, the download and distribution lists do not indicate the customers are RNMI customers as opposed to TRUSL customers. *Dkt. No.* 61-16 (REUTERS000092); *Dkt. No.* 61-17 (REUTERS000094); *Dkt. No.* 61-18 (REUTERS000278–285). Further, Defendants jointly responded to all discovery demands and in their response Interrog. No. 23, Defendants state that they conducted a reasonable search and produced responsive, non-privileged documents showing third parties identified via that search who received the Videos at issue in this case or links to such Videos from Defendants, and not just RNMI as opposed to TRUSL. *Dkt. No.* 61-60 (Resp. to Interrog. No. 23) at 10–11.

43.    Most of RNMI's customers that received the video edits (or links to those edits) did so via an automated feed. *Compare* Ex. 18 (REUTERS000278–285) *with* Ex. 16 (REUTERS000092) *and* Ex. 17 (REUTERS000094). Ex. 60 (Resp. to Interrog. No. 23) at 11.

> **PLAINTIFF'S RESPONSE:** Disputed as to "RNMI's customers". The download and distribution lists do not indicate the customers are RNMI customers as opposed to TRUSL customers. *Dkt. No.* 61-16 (REUTERS000092); *Dkt. No.* 61-17 (REUTERS000094); *Dkt. No.* 61-18 (REUTERS000278–285). Further,

Defendants jointly responded to all discovery demands and in their response to Interrog. No. 23, Defendants jointly state that they conducted a reasonable search and produced responsive, non-privileged documents showing third parties identified via that search who received the Videos at issue in this case or links to such Videos from Defendants, and not just RNMI as opposed to TRUSL. *Dkt. No.* 61-60 (Resp. to Interrog. No. 23) at 10–11.

44.    For the customers that received the video edits (or links to those edits), together with other content, via an automated feed, these customers did not necessarily view, open, use, publish, distribute, or even want those particular edits. Ex. 60 (Resp. to Interrog. No. 23) at 11; Ex. 45 (Flatley Dep.) at 92:15–93:2.

   **PLAINTIFF'S RESPONSE:** Disputed as Paragraph 44 mischaracterizes testimony. Ms. Flatley testified that Reuters does not know if the clients downloaded or used the video edits. *Dkt. No.* 61-45 (Flatley Dep.) at 92:15–93:2.

45.    RNMI's customers received the video edits either free of charge in most cases (under a prepaid all-you-can-eat subscription) or for as little as $19.80 (under a prepaid points subscription). Ex. 16 (REUTERS000092); Ex. 17 (REUTERS000094); Ex. 18 (REUTERS000278–285); Ex. 45 (Flatley Dep.) at 83:14–19, 109:10–12.

   **PLAINTIFF'S RESPONSE:** Disputed as to "RNMI's customers". The download and distribution lists do not indicate the customers are RNMI customers as opposed to TRUSL customers. *Dkt. No.* 61-16 (REUTERS000092); *Dkt. No.* 61-17 (REUTERS000094); *Dkt. No.* 61-18 (REUTERS000278–285). Further, Defendants jointly responded to all discovery demands and in their response to Interrog. No. 23, Defendants jointly state that they conducted a reasonable search

and produced responsive, non-privileged documents showing third parties identified via that search who received the Videos at issue in this case or links to such Videos from Defendants, and not just RNMI as opposed to TRUSL. *Dkt. No.* 61-60 (Resp. to Interrog. No. 23) at 10–11. Plaintiff further disputes Defendants' self-serving assertion that customers who have paid for a content subscription agreement "received the video edits free of charge" since they have a paid content subscription for which each download there would need to be an allocated charge from the monthly subscription fee.

**The LANA Video Edit**

46.     LANA cut its own video edit using some of the same blizzard footage as well as other footage. Ex. 15 (REUTERS000020).

**PLAINTIFF'S RESPONSE:** Disputed to the extent "other footage" implies the LANA edit contained video footage not owned by Plaintiff.

47.     LANA obtained this footage under license from a company called Angel Media Production. Ex. 10 at REUTERS000288; Ex. 11 at REUTERS000292.

**PLAINTIFF'S RESPONSE:** Undisputed.

48.     On December 28, 2022, LANA uploaded this video edit to Reuters Connect. Ex. 19 at PLA000862–865.

**PLAINTIFF'S RESPONSE:** Undisputed.

49.     LANA's video edit was not distributed to or downloaded by anyone. Ex. 45 (Flatley Dep.) at 74:24–75:7.

**PLAINTIFF'S RESPONSE:** Undisputed.

**RNMI's Innocent Conduct**

50.    RNMI and its video producers rely on Stringr's representations and warranties that Stringr has all necessary rights to license its footage to RNMI and that the footage is what Stringr says it is. Ex. 45 (Flatley Dep.) at 44:16–45:6, 129:21–130:18; Ex. 46 (Frail Dep.) at 31:23–33:22; Ex. 1 at REUTERS000011–12, § 8.

>    **PLAINTIFF'S RESPONSE:** Disputed that RNMI's reliance or conduct was reasonable or innocent.

51.    RNMI relies on LANA's representations and warranties that LANA has all necessary rights to license its content to RNMI and that the content is what LANA says it is. Ex. 45 (Flatley Dep.) at 44:16–45:6, 129:21–130:18; Ex. 46 (Frail Dep.) at 31:23–33:22; Ex. 9 at REUTERS000004, § 12.

>    **PLAINTIFF'S RESPONSE:** Disputed as to RNMI as RNMI is not named in the agreement with LANA. Further disputed that RNMI's or Defendants' reliance or conduct was reasonable or innocent.

52.    Aside from this lawsuit, to date Stringr has never been the subject of any claim of copyright infringement—spanning over 63,000 sets of videos distributed over a decade to various customers, including RNMI and other major outlets such as CNN, Getty Images, and Daily Motion. Ex. 47 (Stewart Dep.) at 15:2–4, 75:3–10, 146:10–147:3, 152:9–17.

>    **PLAINTIFF'S RESPONSE:** Undisputed.

53.    Aside from this lawsuit, RNMI has never before had any issue with copyright infringement involving Stringr. Ex. 46 (Frail Dep.) at 76:6–23; Ex. 44 (Eiras Dep.) at 122:9–11.

>    **PLAINTIFF'S RESPONSE:** Undisputed.

54.    Prior to the events at issue in December 2022, RNMI had been using Stringr's content for more than a year without any issues. Ex. 46 (Frail Dep.) at 75:8–76:23.

**PLAINTIFF'S RESPONSE:** Undisputed.

55.    Prior to December 2022, RNMI was aware that Stringr was used by a number of respected media companies, including CNN and NBC. Ex. 46 (Frail Dep.) at 75:8–76:5.

**PLAINTIFF'S RESPONSE:** Undisputed.

56.    At all times, Stringr has at least one team member monitoring incoming videos uploaded by videographers, which includes monitoring the video clips, the videographer's history with the platform, and the videographer's location. Ex. 47 (Stewart Dep.) at 22:19–23:24.

**PLAINTIFF'S RESPONSE:** Undisputed.

57.    Morgan's upload location (Fairport, NY) and the footage location indicated in his description (Buffalo, NY) were in the same geographic region (Western New York). Ex. 47 (Stewart Dep.) at 44:18–45:11, 46:19–48:22, 131:18–19.

**PLAINTIFF'S RESPONSE:** Undisputed.

58.    Morgan had uploaded 47 videos to Stringr over seven months on the platform. Ex. 6 at STRINGR-000028, STRINGR-000030; Ex. 47 (Stewart Dep.) at 70:21–71:2, 74:17–75:2.

> **PLAINTIFF'S RESPONSE:** Disputed. Mark Morgan testified that he uploaded
> 47 clips and only about 12 to 15 video events once the clips were edited together.
> Morgan Dep. at 99:7-100:25 (annexed to the Aragona Dec. as Exhibit A).

59.    Morgan had received positive ratings from Stringr's team (ranging from 81 to 91 out of 100). Ex. 6 at STRINGR-000030; Ex. 47 (Stewart Dep.) at 72:16–74:16.

**PLAINTIFF'S RESPONSE:** Undisputed.

60.    Morgan had never before been the subject of a copyright claim with Stringr. Ex. 47 (Stewart Dep.) at 75:3–10.

**PLAINTIFF'S RESPONSE:** Undisputed.

61.     Morgan maintains a YouTube page with hundreds of subscribers and tens of thousands of views of his videos (including drone videos). Ex. 7 (MVMTV); Ex. 47 (Stewart Dep.) at 94:4–6.

**PLAINTIFF'S RESPONSE:** Undisputed.

62.     Morgan's YouTube page was listed on his Stringr profile. Ex. 47 (Stewart Dep.) at 53:8–55:2.

**PLAINTIFF'S RESPONSE:** Undisputed.

63.     In December 2022, the videos Morgan uploaded to the Stringr platform did not raise any red flags about copyright compliance in Stringr's view. Ex. 47 (Stewart Dep.) at 22:19–23:24, 53:8–55:2, 105:3–17.

**PLAINTIFF'S RESPONSE:** Undisputed.

64.     In December 2022, the videos Morgan uploaded to the Stringr platform did not raise any red flags about copyright compliance in the view of RNMI and the RNMI video producers who used his videos. Ex. 43 (Dill Dep.) at 72:9–73:4; Ex. 44 (Eiras Dep.) at 83:8–23; Ex. 46 (Frail Dep.) at 54:18–56:10.

**PLAINTIFF'S RESPONSE:** Disputed as to "RNMI and RNMI video producers". Neither Dill nor Eiras testified that they were employed by RNMI. Further disputed to the extent that the videos "did not raise any red flags" for Defendants' employees implies that the employees conducted any verification of the videos, which they did not. Dill and Eiras both also testified that they do not do any verification of the video sourced from their content partners. *Dkt. No*. 61-43 (Dill Dep.) at 32:15-17, 36:9-37:5, 46:15–47:4; *Dkt. No*. 61-44 (Eiras Dep.) at 37:7–15; Ex. 46. Dill also testified that it would have been concerning to him, had he "caught it", that a video

shot days before on December 23, listed the December 25 upload date as the date it was shot. *Dkt. No*. 61-43 (Dill Dep.) at 77:3-78:7.

65.    RNMI's corporate representative testified that ensuring that RNMI's content is free of copyright issues is "[v]ery important" and "the touchstone of what [RNMI] do[es]." Ex. 46 (Frail Dep.) at 76:24–77:8.

      **PLAINTIFF'S RESPONSE:** Undisputed.

66.    Eiras testified that RNMI "takes copyright very, very seriously," and if RNMI "do[es] not have clear permission to use a video we do not touch it with a ten foot pole." Ex. 44 (Eiras Dep.) at 28:24–29:10, 120:5–122:11.

      **PLAINTIFF'S RESPONSE:** Disputed as to RNMI. Eiras testimony response refers to Reuters, and not RNMI specifically.

67.    RNMI's video producers are routinely trained on copyright. Ex. 44 (Eiras Dep.) at 28:14–29:10; Ex. 46 (Frail Dep.) at 18:10–22.

      **PLAINTIFF'S RESPONSE:** Disputed as to RNMI.

68.    RNMI has a separate department devoted to sourcing content from social media called the "Visual Verification Team" that follows various protocols to license content from social media and verify the provenance of that content. Ex. 46 (Frail Dep.) at 20:9–23; Ex. 44 (Eiras Dep.) at 35:5–6, 37:10–14.

      **PLAINTIFF'S RESPONSE:** Undisputed.

69.    Where video producers like Dill and Eiras use social media content, the Visual Verification Team handles all licensing and verification of the provenance of that content. Ex. 46 (Frail Dep.) at 72:5–22; Ex. 43 (Dill Dep.) at 18:12–19:21, 32:15–33:2, 36:9–37:8.

      **PLAINTIFF'S RESPONSE:** Undisputed.

70.     The Videos that Dill and Eiras used in their video edits, however, were licensed from RNMI's partner Stringr, not social media. Ex. 43 (Dill Dep.) at 13:22–14:5, 61:13–20; Ex. 13 (REUTERS000019); Ex. 44 (Eiras Dep.) at 25:9–17; Ex. 14 (REUTERS000093).

**PLAINTIFF'S RESPONSE:** Undisputed.

71.     If RNMI had to double-check the chain of title for each video purchased under license from Stringr, Dill testified, "That would take up my whole job. I wouldn't be able to do anything else…. That is not realistic in any way, shape, or form." Ex. 43 (Dill Dep.) at 34:4–21.

**PLAINTIFF'S RESPONSE:** Disputed as to RNMI and incorrectly summarizes testimony.

72.     Dill also testified that he "rel[ies] on the credibility" of Stringr and "that Stringr knows their people and … they are going to do the job correctly …. I have to take it on faith that my colleagues know their job and do their job." Ex. 43 (Dill Dep.) at 72:23–73:4.

**PLAINTIFF'S RESPONSE:** Undisputed.

73.     Clement, Plaintiff's corporate representative, testified that the pages of the Stringr platform containing Morgan's videos suggested that the videos depicted the December 2022 storm. Ex. 48 (Clement Dep.) at 101:4–102:4.

**PLAINTIFF'S RESPONSE:** Undisputed.

74.     Clement's licensing agent, Live Storms Media, referred Stringr to Clement and other videographers as a platform they may be interested in using. Ex. 49 (Adair Dep.) at 86:22–88:12.

**PLAINTIFF'S RESPONSE:** Disputed as "referred" implies that Adair or Live Storms Media endorsed Stringr as opposed or simply mentioning or telling others about a new company at the time.

75.     Several videographers who license content through Live Storms Media also have registered accounts with Stringr. Ex. 8 (STRINGR-000049); Ex. 47 (Stewart Dep.) at 136:4–137:19; Ex. 49 (Adair Dep.) at 78:10–80:19.

**PLAINTIFF'S RESPONSE:** Undisputed.

76.     Plaintiff's corporate representative has characterized certain of RNMI's downstream customers, who received the Videos under license from RNMI, as "innocent infringer[s]" who were "obviously trying to do things correctly" and should be held "harmless." Ex. 32 at PLA000072; Ex. 33 at PLA000939.

**PLAINTIFF'S RESPONSE:** Undisputed.

**<u>TRUSL's Lack of Involvement</u>**

77.     TRUSL does not operate the reuters.com website. Lee Decl. ¶ 5.

**PLAINTIFF'S RESPONSE:** Undisputed.

78.     TRUSL does not operate the Reuters Connect platform. Lee Decl. ¶ 6.

**PLAINTIFF'S RESPONSE:** Disputed. Defendants, in their joint answer to the complaint (*Dkt. No.* 19, at ¶ 4) and the amended complaint (*Dkt. No.* 30, at ¶ 4) admit that Thomson and/or its affiliates operate a website at www.reutersconnect.com. Further, the screenshots of the reutersconnect.com platform displaying the video edits list Thomson Reuters as the owner of the Story Copyright. *Dkt. No.* 61-19 at PLA000856-PLA000861. In addition, the download and distribution lists do not indicate the customers are RNMI customers as opposed to TRUSL customers. *Dkt. No.* 61-16 (REUTERS000092); *Dkt. No.* 61-17 (REUTERS000094); *Dkt. No.* 61-18 (REUTERS000278–285). Also, Defendants jointly responded to all discovery demands and in their response to Interrog. No. 23, Defendants state that they conducted a reasonable search and produced

responsive, non-privileged documents showing third parties identified via that search who received the Videos at issue in this case or links to such Videos from Defendants, and not just RNMI as opposed to TRUSL. *Dkt. No.* 61-60 (Resp. to Interrog. No. 23) at 10–11.

79.    TRUSL is not a counterparty to the Provider Agreement with Stringr. Lee Decl. ¶ 7; Ex. 1 at REUTERS000010; Ex. 2 (REUTERS000018).

**PLAINTIFF'S RESPONSE:** Undisputed.

80.    TRUSL is not a counterparty to the Contributor Agreement with LANA. Lee Decl. ¶ 8; Ex. 9 at REUTERS000001.

**PLAINTIFF'S RESPONSE:** Disputed as the Contributor Agreement with LANA grants the referenced license to La Ley which is then referred to generally as "Reuters," and "Reuters Group" as defined. *Dkt. No.* 61-9 at REUTERS000001, § 1.14 and 2.1, and REUTERS000004, § 11.

81.    TRUSL is not a counterparty to the subscription agreements under which RNMI's downstream customers received the video edits at issue. Lee Decl. ¶ 9.

**PLAINTIFF'S RESPONSE:** Disputed as Defendants did not produce their subscription agreements with the hundreds of downstream customers identified in *Dkt. No.* 61-16 (REUTERS000092); *Dkt. No.* 61-17 (REUTERS000094); *Dkt. No.* 61-18 (REUTERS000278–285) and therefore there is no documentary evidence to support that TRUSL is not a counterparty to any of the subscription agreements. While Defendants jointly produced three templates of subscription agreements under which "Reuters" licensed content, in response to Plaintiff's Request for

Production No. 4, their responses do not identify RNMI as Reuters, but generally

refer to both Defendants as Reuters. *Dkt. No*. 65-1 at page 7.

82.    TRUSL did not license, distribute, display, or otherwise use the video edits at issue.

Lee Decl. ¶ 10.

> **PLAINTIFF'S RESPONSE:** Disputed. The screenshots of the
> reutersconnect.com platform displaying the video edit list Thomson Reuters as the
> owner of the Story Copyright. *Dkt. No*. 61-19 at PLA000856-PLA000861. In
> addition, the download and distribution lists do not indicate the customers are
> RNMI customers as opposed to TRUSL customers. *Dkt. No.* 61-16
> (REUTERS000092); *Dkt. No.* 61-17 (REUTERS000094); *Dkt. No.* 61-18
> (REUTERS000278–285). Further, Defendants jointly responded to all discovery
> demands and in their response Interrog. No. 23, Defendants state that they
> conducted a reasonable search and produced responsive, non-privileged documents
> showing third parties identified via that search who received the Videos at issue in
> this case or links to such Videos from Defendants, and not just RNMI as opposed
> to TRUSL. *Dkt. No.* 61-60 (Resp. to Interrog. No. 23) at 10–11.

83.    TRUSL has not employed the video producers responsible for the two RNMI video

edits or any other individual involved in producing, editing, licensing, distributing, displaying, or

otherwise using the video edits at issue. Lee Decl. ¶ 11.

> **PLAINTIFF'S RESPONSE:** Disputed. Scott Dill, a prior employee, testified that
> his last place of employment was Reuters as a news producer, not RNMI. *Dkt. No*.
> 61-43 (Dill Dep.) at 15:15–13:10. Arlene Eiras testified that she is employed by
> Thomson Reuters. *Dkt. No*. 61-44 (Eiras Dep.) at 12:17–13:10. Mr. Dill's email

address is listed as Scott.Dill@thomsonreuters.com and Ms. Eiras' email addresses is listed as Arlene.Eiras@thomsonreuters.com. *Dkt. No.* 61-12 at REUTERS000273.

**Plaintiff's Videos and Other Footage**

**The November 2022 Videos at Issue**

84.     Plaintiff claims to own six videos that were used in the RNMI and LANA edits, as well as a seventh video that was used in the LANA edit only (collectively, the "Videos"). Ex. 38 (First Amended Complaint ("FAC")) ¶¶ 18–25, 28. *Compare* Ex. 20 (PLA000840–846) *with* Ex. 13 (REUTERS000019), Ex. 14 (REUTERS000093), *and* Ex. 15 (REUTERS000020).

**PLAINTIFF'S RESPONSE:** Undisputed.

85.     The Videos at issue, which Clement claims to have shot in November 2022, are:

a.     "11-18-22 Orchard Park, NY-Orchard Park maze of mayhem"

b.     "11-18-22 Hamburg, NY-Snow emergency, cars and semis stranded in feet of snow"

c.     "11-18-2022 Orchard Park, NY Record snow leaves stranded vehicles everywhere"

d.     "11-18-22 Hamburg, NY-Drivers stuck, travelers stranded in four feet of snow SOTs"

e.     "11-18-22 Lackawanna, NY-Firefighters shoveling to save patient, cars stuck, interstate closed"

f.     "11-19-22 New York Lake Effect Snow"

g.     "11-18-22 Orchard Park, NY-Entire city paralyzed from record snow"

Ex. 38 (FAC) ¶¶ 18–25; Ex. 48 (Clement Dep.) at 20:5–29:4.

**PLAINTIFF'S RESPONSE:** Undisputed.

86.     Plaintiff produced just three invoices during discovery showing that Clement's customers licensed one or more of the Videos at issue from his licensing agent, Live Storms Media. Ex. 21 (PLA000542); Ex. 22 (PLA000543); Ex. 23 (PLA000539–540).

> **PLAINTIFF'S RESPONSE:** Disputed as "produced just three invoices" implies Plaintiff's videos were only licensed to three customers, however Clement testified that he believes more of the November 2022 videos were licensed through Live Storms Media, as well as to subscription clients but was only able to produce what was provided by Live Storms Media. *Dkt. No.* 61-48 (Clement Dep.) at 59:24–60:18.

87.     Two of those three invoices produced in this action show that Live Storms Media licensed only one of the seven Videos at issue: "11-18-22 Hamburg, NY-Snow emergency, cars and semis stranded in feet of snow." Ex. 21 (PLA000542); Ex. 22 (PLA000543).

> **PLAINTIFF'S RESPONSE:** Disputed as Clement testified that he believes more of the November 2022 videos were licensed through Live Storms Media, as well as to subscription clients but was only able to produce what was provided by Live Storms Media. *Dkt. No.* 61-48 (Clement Dep.) at 59:24–60:18.

88.     Those two licenses for the "11-18-22 Hamburg, NY-Snow emergency, cars and semis stranded in feet of snow" Video were sold to two separate customers for ██ apiece (of which ██ each constituted Clement's share) on November 18, 2022. Ex. 21 (PLA000542); Ex. 22 (PLA000543); Ex. 48 (Clement Dep.) at 44:8–23; Ex. 49 (Adair Dep.) at 36:2–38:8.

> **PLAINTIFF'S RESPONSE:** Undisputed.

89.     The third of those invoices produced in this action shows a license for all the Videos at issue plus additional footage to a third customer as part of a prepaid "day rate" which included

all footage Clement shot each day on November 18 and 19, 2022. Ex. 23 at PLA000540; Ex. 48 (Clement Dep.) at 49:5–15.

> **PLAINTIFF'S RESPONSE:** Undisputed.

90.    None of the Videos were licensed between November 20, 2022 and December 23, 2022. Ex. 48 (Clement Dep.) at 67:10–23, 99:20–25.

> **PLAINTIFF'S RESPONSE:** Disputed. Clement testified that the November footage "was used through some of my subscriptions, but actual reissue of license, not to my knowledge. But it is possible. I can't recall. It's a long time ago." *Dkt. No.* 61-48 (Clement Dep.) at 67:10–16.

91.    The last sale of a license for any of the Videos occurred on or before November 19, 2022, as part of the prepaid day rate. Ex. 23 at PLA000540; Ex. 48 (Clement Dep.) at 67:10–23.

> **PLAINTIFF'S RESPONSE:** Disputed. Clement testified that the November footage "was used through some of my subscriptions, but actual reissue of license, not to my knowledge. But it is possible. I can't recall. It's a long time ago." *Dkt. No.* 61-48 (Clement Dep.) at 67:10–16.

**<u>Plaintiff's December 2022 Footage</u>**

92.    Clement was also present in Western New York and shot footage of Winter Storm Elliot in December 2022. Ex. 48 (Clement Dep.) at 76:10–14.

> **PLAINTIFF'S RESPONSE:** Disputed as to Western New York as Clement was specifically present in Buffalo, New York during the blizzard.

93.    Clement arrived in Western New York on the evening of December 22, 2022 or early in the morning of December 23, 2022. Ex. 48 (Clement Dep.) at 77:11–14.

> **PLAINTIFF'S RESPONSE:** Disputed as to Western New York as Clement was specifically present in Buffalo, New York during the blizzard.

94.     Clement left New York on December 27, 2022. Ex. 48 (Clement Dep.) at 77:15–19.

> **PLAINTIFF'S RESPONSE:** Undisputed.

95.     Clement filmed footage of the blizzard in Western New York all of the days that he was in Western New York. Ex. 48 (Clement Dep.) at 77:20–23.

> **PLAINTIFF'S RESPONSE:** Disputed as to Western New York as Clement was specifically present in Buffalo, New York during the blizzard.

96.     Clement delivers his footage for potential licensing to customers on the same day he films it, nearly one hundred percent of the time. Ex. 48 (Clement Dep.) at 41:17–42:21.

> **PLAINTIFF'S RESPONSE:** Undisputed.

97.     Plaintiff produced just four invoices during discovery showing that Clement's customers purchased newsgathering licenses for some of his footage of the December 2022 blizzard from his licensing agent, Live Storms Media. Ex. 24 (PLA000547); Ex. 25 (PLA000549); Ex. 26 (PLA000545); Ex. 27 (PLA000546).

> **PLAINTIFF'S RESPONSE:** Disputed as "produced just four invoices" implies Plaintiff's December videos were only licensed to three customers, however Clement testified he can only go by what was provided by Live Storms Media. Further disputed to the extent Paragraph 97 implies that the December videos were not valuable. *Dkt. No*. 61-48 (Clement Dep.) at 91:4–92:2.

98.     Those four invoices produced in this action show that the newsgathering licenses for footage of the December 2022 blizzard were sold to three separate customers (including two sales to one customer). Ex. 24 (PLA000547); Ex. 25 (PLA000549); Ex. 26 (PLA000545); Ex. 27 (PLA000546).

**PLAINTIFF'S RESPONSE:** Undisputed.

99.     Clement did not produce invoices for newsgathering licenses for any footage shot on December 23, 24, or 26, 2022. Ex. 24 (PLA000547); Ex. 25 (PLA000549); Ex. 26 (PLA000545); Ex. 27 (PLA000546); Ex. 48 (Clement Dep.) at 77:20–84:3.

**PLAINTIFF'S RESPONSE:** Undisputed.

100.     All of those invoices for newsgathering licenses were for one of two videos shot on December 25, 2022. Ex. 24 (PLA000547); Ex. 25 (PLA000549); Ex. 26 (PLA000545); Ex. 27 (PLA000546).

> **PLAINTIFF'S RESPONSE:** Disputed. Plaintiff was only able to produce licenses
> of the December 2022 footage that were provided by Live Storms Media. *Dkt. No.*
> 61-48 (Clement Dep.) at 78:3–79:8.

101.     Two sales of newsgathering licenses for the December 25, 2022 footage were completed on December 25, 2022, and two sales of newsgathering licenses for such footage were completed on December 27, 2022. Ex. 24 (PLA000547); Ex. 25 (PLA000549); Ex. 26 (PLA000545); Ex. 27 (PLA000546).

**PLAINTIFF'S RESPONSE:** Undisputed.

102.     Each sale of newsgathering licenses for the December 25, 2022 footage was for ██ apiece (of which ██ each constituted Clement's share). Ex. 24 (PLA000547); Ex. 25 (PLA000549); Ex. 26 (PLA000545); Ex. 27 (PLA000546).

**PLAINTIFF'S RESPONSE:** Undisputed.

103.     WxChasing later sold a stock license for various footage of the December 2022 blizzard to a fourth customer in July 2024. Ex. 28 at PLA000552, PLA000554.

**PLAINTIFF'S RESPONSE:** Undisputed.

**Plaintiff's Lack of Licensing Revenue**

104.    The sole source of Global Weather's revenue to date is from obtaining money settlements from threatened and filed copyright infringement lawsuits. Ex. 48 (Clement Dep.) at 129:3–10, 142:12–143:24.

>    **PLAINTIFF'S RESPONSE:** Disputed insofar as "lack of licensing revenue" implies Plaintiff is precluded from seeking to recover actual damages. Paragraph 1 of the Assignment from Clement to Global Weather (*Dkt. No*. 61-31 at PLA000021) states that in addition to the "rights, titles and interests to all intellectual property", Clement also assigned to Global Weather "all causes of action accruing or occurring before or during the term of this Agreement, including the right to receive and retain any proceeds related thereto." As the copyright holder and assignee, Plaintiff is entitled to damages under the Copyright Act.

105.    Global Weather has never licensed any videos itself or received any revenue from licensing its copyrighted works. Ex. 48 (Clement Dep.) at 129:11–130:15, 133:4–22.

>    **PLAINTIFF'S RESPONSE:** Disputed as to revenue received from licensing. Clement testified that WxChasing is the public facing licensing agent for Plaintiff and receives payment on Global Weather and Clement's behalf which is ultimately paid to Clement, the sole owner of both companies. *Dkt. No*. 61-48 (Clement Dep.) at 14:13-14, 132:13–133:18.

106.    Prior to assigning his works to Global Weather, either WxChasing or Live Storms Media licensed Clement's copyrighted works to third-party licensees. Ex. 48 (Clement Dep.) at 111:6–19.

>    **PLAINTIFF'S RESPONSE:** Undisputed.

107.    Prior to assigning his works to Global Weather, WxChasing—not Clement—was the payee for licensing revenue obtained as a result of Live Storms Media's licensing Clement's copyrighted works. Ex. 48 (Clement Dep.) at 130:4–15.

> **PLAINTIFF'S RESPONSE:** Disputed. Clement testified that at the time he cannot remember if Live Storms Media paid him directly instead of WxChasing and that he would have to look back to be sure. *Dkt. No.* 61-48 (Clement Dep.) at 132:13–133:3. Further, Brett Adair, corporate representative of Live Storms Media, testified "we would pay WxChasing or Brandon Clement. I am unsure who we paid at that point in time because I know that he formed his company. So yes, in general we did pay either WxChasing or Michael Brandon Clement." *Dkt. No.* 61-49 (Clement Dep.) at 20:8–19.  Adair further testified "I am unsure if all payments would go to WxChasing or if some would go to Global Weather Productions. I would have to check." *Dkt. No.* 61-49 (Clement Dep.) at 20:20–21:11.

108.    Prior to assigning his works to Global Weather, WxChasing—not Clement—was the payee for licensing revenue obtained as a result of WxChasing's licensing Clement's copyrighted works. Ex. 48 (Clement Dep.) at 130:4–15, 132:13–18.

> **PLAINTIFF'S RESPONSE:** Disputed as to "payee for licensing revenue." Clement testified that WxChasing is the payee and Clement ultimately receives the revenue from WxChasing and Plaintiff as the sole owner of both companies. *Dkt. No.* 61-48 (Clement Dep.) at 133:4–133:18.

109.    Since Global Weather's founding in May 2023, either WxChasing or Live Storms Media licensed Global Weather's copyrighted works to third-party licensees. Ex. 48 (Clement Dep.) at 129:11–130:3.

> **PLAINTIFF'S RESPONSE:** Undisputed

110. WxChasing—not Global Weather or Clement—has been and is the payee for licensing revenue obtained as a result of Live Storms Media's licensing Global Weather's copyrighted works. Ex. 48 (Clement Dep.) at 129:14–130:15.

> **PLAINTIFF'S RESPONSE:** Disputed. Clement testified that at the time he cannot remember if Live Storms Media paid him directly instead of WxChasing and that he would have to look back to be sure. *Dkt. No*. 61-48 (Clement Dep.) at 132:13–133:3.

111. WxChasing—not Global Weather or Clement—has been and is the payee for licensing revenue obtained as a result of WxChasing's licensing Global Weather's copyrighted works. Ex. 48 (Clement Dep.) at 129:14–20.

> **PLAINTIFF'S RESPONSE:** Disputed. Clement testified that WxChasing is the public facing licensing agent for Plaintiff and receives payment on Global Weather and Clement's behalf which is ultimately paid to Clement, the sole owner of both companies. *Dkt. No*. 61-48 (Clement Dep.) at 14:13-14, 132:13–133:18.

112. Clement, as Plaintiff's corporate representative, testified that there is no written agreement between Global Weather and WxChasing enabling WxChasing to license Global Weather's videos, because he is "the sole owner of both. Again, I don't have a contract with myself." Ex. 48 (Clement Dep.) at 85:4–23.

> **PLAINTIFF'S RESPONSE:** Undisputed.

**<u>Plaintiff's Purported Lost Sales</u>**

113. Plaintiff produced no evidence that Clement or his entities have ever sold licenses to the majority of RNMI's downstream customers that received the two RNMI video edits (or links

to those edits). Ex. 48 (Clement Dep.) at 191:5–232:7; Ex. 16 (REUTERS000092); Ex. 17 (REUTERS000094); Ex. 18 (REUTERS000278–285).

> **PLAINTIFF'S RESPONSE:** Disputed as to "RNMI's customers" and "RNMI video edits." Disputed as Plaintiff has produced evidence of licensing its videos to customers it shares with Defendants, including major news outlets. Compare *Dkt. No.* 61-21 to 61-27 (PLA000542-PLA000544; PLA000539-PLA000541; PLA000547-PLA000549; PLA000545- PLA000546) and *Dkt. No.* 61-18 (REUTERS000278–285).

114.    Neither Plaintiff, Clement, nor his other entities do business in a number of foreign countries where RNMI's customers are located, based on Clement's disagreement with the legal regimes there. Ex. 48 (Clement Dep.) at 191:10–24.

> **PLAINTIFF'S RESPONSE:** Undisputed.

115.    Newsgathering content is "perishable," and newsgathering sales only occur within the first few days after the news event, including in connection with the November 2022 Videos. Ex. 48 (Clement Dep.) at 30:4–22, 36:12–24, 67:2–23.

> **PLAINTIFF'S RESPONSE:** Disputed as "perishable" implies that the video footage loses all value, when Clement testified further that electronic news gathering and licensing used for current news will transfer over to stock footage. Once the footage transfers to stock footage, the content actually increases in value. *Dkt. No*. 61-48 (Clement Dep.) at 31:12–21. Clement further testified that when there are "repeat events from the same city, like Buffalo getting hit with a blizzard six weeks after they got the record amount of snow, it becomes an ENG story again." *Dkt. No*. 61-48 (Clement Dep.) at 235:12–20. Additionally, Adair testified

that "snowstorms are our biggest sellers," that they sell "50 to 60 percent more snow videos than other types" of weather videos, and that Clement is not a standard videographer as he produces and sells more content than Live Storm's other producing videographers. *Dkt. No*. 61-49 (Adair Dep.) at 38:15–40:4.

116.    Plaintiff did not lose any newsgathering sales of the November 2022 Videos as a result of the alleged infringement, which occurred over a month later in December 2022. *See* Ex. 48 (Clement Dep.) at 30:4–22, 36:12–24, 67:2–23.

> **PLAINTIFF'S RESPONSE:** Disputed. Clement testified that when there are "repeat events from the same city, like Buffalo getting hit with a blizzard six weeks after they got the record amount of snow, it becomes an ENG story again." *Dkt. No*. 61-48 (Clement Dep.) at 235:12–20.

117.    Plaintiff and Clement have many works with zero stock licenses, others with four or five, and still others with twenty to fifty, but between zero and five stock licenses was "typical" for his works. Ex. 48 (Clement Dep.) at 37:11–38:14.

> **PLAINTIFF'S RESPONSE:** Disputed. Clement testified that zero to five stock licenses can be generally typical for typical storms, but neither of these two storms were typical. *Dkt. No.* 61-48 (Clement Dep.) at 37:11–38:3.

118.    Clement, as Plaintiff's corporate representative, testified that the number of lost stock licenses of his November 2022 Videos was "impossible to quantify." Ex. 48 (Clement Dep.) at 236:11–15.

> **PLAINTIFF'S RESPONSE:** Undisputed.

119.    Clement, as Plaintiff's corporate representative, testified that he had "no idea" and "no way of quantifying" how many sales of November 2022 footage he or his entities lost. Ex. 48 (Clement Dep.) at 234:25–236:15.

**PLAINTIFF'S RESPONSE:** Undisputed.

120.    When questioned about the number of lost sales of the December 2022 footage, for both news and stock licenses, Clement, as Plaintiff's corporate representative, testified that it was "impossible to say," he "would be speculating," and he "d[oesn't] know the opportunities" that were lost. Ex. 48 (Clement Dep.) at 234:6–14, 236:20–239:18.

**PLAINTIFF'S RESPONSE:** Undisputed.

**Procedural History**

121.    On October 9, 2023, Plaintiff sent a letter to Defendants attaching a draft of its Complaint. Ex. 34 (REUTERS000048–84).

**PLAINTIFF'S RESPONSE:** Undisputed.

122.    Defendants responded by letter on October 22 and 27, 2023, explaining that the Videos had been licensed from Stringr and LANA, and referred Plaintiff to those companies. Ex. 35 (REUTERS000091); Ex. 36 (REUTERS000086).

**PLAINTIFF'S RESPONSE:** Undisputed.

123.    Plaintiff filed this lawsuit on January 24, 2024, alleging infringement based on the first RNMI video edit, entitled "Traffic chaos as historic snowfall blankets New York," and the LANA video edit. Ex. 37 (Compl.) ¶¶ 34–36.

> **PLAINTIFF'S RESPONSE:** Disputed as to "RNMI video edit". Further disputed as the Complaint does not specify or limit the claim of infringement solely based on the "Traffic Chaos" video edit. The screenshots of the infringing uses reference

both the "Traffic Chaos" report and the "Once in a lifetime blizzard report." *Dkt. No.* 61-37, Exhibit 2, Infringements #1-5 at pages 17-21.

124.    RNMI and TRUSL were served with the Summons and Complaint in this lawsuit on February 6, 2024. Ex. 39 (Affidavits of Service).

**PLAINTIFF'S RESPONSE:** Undisputed.

125.    By February 7, 2024, the day after being served with the Summons and Complaint, RNMI had removed the LANA video edit and the RNMI video edit entitled "Traffic chaos as historic snowfall blankets New York" from the Reuters Connect platform and reuters.com. Lee Decl. ¶ 14.

**PLAINTIFF'S RESPONSE:** Plaintiff disputes Paragraph 125 insofar as it is not supported by evidence in admissible form. Defendants' response to Plaintiff's Request for Production No. 25 states Defendants will conduct a reasonable search and produce responsive, non-privileged documents, if any, sufficient to show the date(s) the Videos at issue in this case were removed from the Websites. *Dkt. No.* 65-1. However, Defendants proffered no documents to support this contention. Therefore, the February 7, 2024 date of removal is disputed.

126.    On May 1, 2024, RNMI published an advisory to its customers requesting that they cease using the "Traffic chaos as historic snowfall blankets New York" video edit in light of the ongoing copyright infringement litigation. Ex. 41 (REUTERS000102).

**PLAINTIFF'S RESPONSE:** Disputed as to "RNMI". Ex. 41 (REUTERS000102) refers generally to Reuters and includes a copyright notice © 2024 Thomson Reuters.

127.    By May 14, 2024, RNMI had removed the RNMI video edit entitled "'Once-in-a-lifetime' blizzard kills at least 60 people nationwide" from the Reuters Connect platform. Lee Decl. ¶ 17.

> **PLAINTIFF'S RESPONSE:** Disputed as to "RNMI". Ex. 42 (REUTERS000103) refers generally to Reuters and includes a copyright notice © 2024 Thomson Reuters.

128.    Also on May 14, 2024, RNMI published an advisory to its customers requesting that they cease using the video edit entitled "'Once-in-a-lifetime' blizzard kills at least 60 people nationwide" in light of the ongoing copyright litigation. Ex. 42 (REUTERS000103).

> **PLAINTIFF'S RESPONSE:** Disputed as to "RNMI". Ex. 42 (REUTERS000103) refers generally to Reuters and includes a copyright notice © 2024 Thomson Reuters.

129.    On July 15, 2024, Plaintiff amended its Complaint, adding a claim based on the second RNMI video edit, "'Once-in-a-lifetime' blizzard kills at least 60 people nationwide." Ex. 38 (FAC) ¶ 43.

> **PLAINTIFF'S RESPONSE:** Disputed as to "RNMI video edit". Further disputed as the Complaint does not specify or limit the claim of infringement solely based on the "Traffic Chaos" video edit. The screenshots of the infringing uses reference both the "Traffic Chaos" report and the "Once in a lifetime blizzard report." *Dkt. No.* 61-37, Exhibit 2, Infringements #1-5 at pages 17-21. Plaintiff amended the complaint to add two additional infringed videos and two additional screenshots of the infringed videos. *Dkt. No.* 61-38, Exhibit 1: Video #6 and Video #7; Exhibit 2, Infringements #20-21 at pages 40-41.

Dated: January 17, 2025
New York, New York

                                    **SANDERS LAW GROUP**

                                    By: _/s/ Renee J. Aragona_
                                    Renee J. Aragona, Esq.
                                    Craig B. Sanders, Esq.
                                    333 Earle Ovington Blvd, Suite 402
                                    Uniondale, NY
                                    Tel: (516) 203-7600
                                    Email: raragona@sanderslaw.group
                                    Email: csanders@sanderslaw.group
                                    _Attorneys for Plaintiff_