UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
GLOBAL WEATHER PRODUCTIONS LLC,  :
  :    Case No. 24-cv-507 (AS)
                 Plaintiff,  :
  :
      - against -  :
  :
REUTERS NEWS & MEDIA, INC., and  :
THOMSON REUTERS US LLC,  :
  :
                 Defendants.  :
------------------------------------------------------------------- x

# DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND PRECLUSION SANCTIONS

Jeremy A. Chase
Katherine M. Bolger
Raphael Holoszyc-Pimentel
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
jeremychase@dwt.com
katebolger@dwt.com
rhp@dwt.com

*Attorneys for Defendants Reuters News & Media Inc. and Thomson Reuters U.S. LLC*

Pursuant to the Court's instructions at the April 21, 2025 conference (Dkt. 87 at 33:8–14), Defendants respectfully submit this supplemental memorandum of law to address Plaintiff's belatedly-disclosed damages computation and in further support of Defendants' motion for partial summary judgment and preclusion sanctions.[1]  Plaintiff's belated disclosure only confirms that (i) preclusion sanctions are warranted, (ii) Plaintiff has no actual damages as a matter of law, and (iii) Plaintiff's statutory damages are limited as a matter of law.  Plaintiff's damages computation is wildly inflated and untethered from the evidence in this case.  Summary judgment on Plaintiff's damages claims is appropriate and necessary to narrow Plaintiff's claims for trial and to conserve the parties'—and this Court's—time and resources.

## I. THE BELATED DISCLOSURE CONFIRMS THE NEED FOR PRECLUSION

On the morning of the summary-judgment hearing on April 21, 2025—one year after initial disclosures were due (Ex. 50 at 5) and nearly five months after Plaintiff's own self-imposed deadline to provide Defendants with a damages computation (Chase Decl. ¶¶ 66–69 & Ex. 58 at 1)—Plaintiff, for the first time, disclosed its computation.  Plaintiff calculated actual damages as:

> $7,650,000.00, based on loss of Plaintiff's actual licensing ($1,000 per video for each of Plaintiff's six Videos used in Defendants' video edits) to 1,275 of Defendants' customers ….

Ex. A at 6 (footnote omitted).  This computation is belated and implausible, and Plaintiff's actual-damages evidence should be precluded.

*First*, Plaintiff's disclosure admitted that Plaintiff "can … estimate" damages "based on Defendants' representations regarding their distribution."  *Id.*  Plaintiff's admission proves that it had no justification for withholding its estimate for months.  Indeed, initial disclosures *require* Plaintiff to provide "good-faith estimates of each category of its alleged damages … based on the

---

[1] Citations to numerical exhibits are to the Chase Declaration filed at Dkts. 57 & 61.  Citations to alphabetical exhibits are to the Supplemental Chase Declaration filed herewith.

1

data then available" to it. *Jane St. Grp., LLC v. Millennium Mgmt. LLC*, 2024 WL 4741920, at *2 (S.D.N.Y. Oct. 9, 2024); *see also City & Cnty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) ("Plaintiff should provide its assessment of damages in light of the information currently available to it …."). Plaintiff's insistent demand for a "complete" list of "all" recipients is not only unreasonable,[2] it is beside the point: Plaintiff "is not excused from making its [damages] disclosures … because it challenges the sufficiency of [Defendants'] disclosures." Fed. R. Civ. P. 26(a)(1)(E). If Defendants' lists were incomplete, Plaintiff's remedy was to supplement its computation—not to improperly withhold its estimate for months.

*Second*, Plaintiff's belated disclosure prejudiced Defendants in multiple ways. Until that disclosure, Plaintiff's damages theory had been a moving target, forcing Defendants to waste time, resources, and fees exploring theories that Plaintiff had suggested but never formally disclosed—and now has abandoned. Dkt. 55 at 10–11 & n.4; Dkt. 81 at 4. Significantly, Defendants were deprived of the opportunity to depose Plaintiff about its recent computation. As explained *infra*, that computation is fatally flawed and implausible, and Defendants would have exposed its flaws and impeached Plaintiff's credibility in the deposition, had Plaintiff disclosed it prior to the deposition as promised. Plaintiff's untimely disclosure squandered that opportunity and burdened Defendants with litigating against Plaintiff's shifting damages theories. Plaintiff's actual-damages evidence should be precluded as a consequence.

## II. PLAINTIFF CANNOT SHOW LOST SALES TO 1,275 CUSTOMERS

It is well-established in the Second Circuit that "[w]hen seeking an award of damages for lost sales, the burden is on the plaintiff to demonstrate that it would have made the sales *but for* the infringing activity." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 108 (2d Cir. 1999) (emphasis added)

---

[2] As Defendants have repeatedly explained to Plaintiff, "a perfectly comprehensive distribution list is impossible." Dkt. 86 at 2.

(quoting *Odegard, Inc. v. Costikyan Classic Carpets, Inc.*, 963 F. Supp. 1328, 1340 (S.D.N.Y. 1997)). Indeed, according to the very cases that Plaintiff repeatedly cites, lost sales are calculated by the number of customers who "would have bought from plaintiff *but for* defendant's infringement." Ex. A at 6 n.1 (emphasis added) (quoting *Agence France Presse v. Morel*, 2014 WL 3963124, at *13 (S.D.N.Y. Aug. 13, 2014)) (citing *Stevens Linen Assocs., Inc. v. Mastercraft Corp.*, 656 F.2d 11, 15 (2d Cir. 1981)); *see also* Dkt. 76 at 10 (same).[3]

Lost sales simply cannot be based on "undue speculation." *Baker v. Urb. Outfitters, Inc.*, 254 F. Supp. 2d 346, 356 (S.D.N.Y. 2003) (quoting *Davis v. Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001)). Plaintiff's bald disclosure that it seeks lost sales to 1,275 customers—without any facts or expert testimony supporting the notion that each of those customers would have bought from Plaintiff—confirms the speculative and unsupported nature of Plaintiff's claim. Lacking any evidence, Plaintiff again just cites to *Morel* and the cases cited therein.[4] Ex. A at 6 n.1. That is not enough. Plaintiff "has not adduced sufficiently concrete evidence supporting [its] theories of actual damages" to survive summary judgment. *Madden v. DreamWorks, LLC*, 2009 WL

---

[3] At the conference, Plaintiff for the first time cited the out-of-circuit case *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087–88 (9th Cir. 2014). That case is inapplicable, as it concerns a different actual-damages theory: the fee for a hypothetical license *to the defendant*, not lost sales *to third parties*. Plaintiff's damages theory is the latter, and, to this day, Plaintiff has not offered an alternative theory of a reasonable fee for a license to Defendants. *See* Ex. A at 6 (actual damages based on lost licensing "to … Defendants' customers").

[4] As Defendants have explained, *Morel* and the cases cited therein are distinguishable, because those plaintiffs set forth non-speculative evidence supporting their claim of lost sales. Dkt. 55 at 20 n.5; Dkt. 81 at 7–8 n.5. Here, Plaintiff offers *no* evidence to support its claim of any lost sales (let alone 1,275), and all the evidence is to the contrary. For instance: (1) Plaintiff never earned any licensing revenue, nor is there any evidence that Plaintiff's predecessor did; (2) Plaintiff admittedly had "no idea" how many sales it lost, which were "impossible to quantity"; (3) RNMI's customers would not have knowingly purchased from Plaintiff month-old Videos of the wrong storm to depict the December 2022 snowstorm; (4) RNMI's customers automatically received or had access to subscription content (including non-infringing footage of the correct storm) and had no desire or need to seek out each Video from Plaintiff; and (5) Plaintiff does not do business with the vast majority of RNMI's customers. Dkt. 55 at 12–20; Dkt. 81 at 5–7.

3

10706574, at *2–3 (E.D.N.Y. Aug. 10, 2009) (citing *Davis*, 246 F.3d at 161, 172).

Moreover, Plaintiff's computation is flawed and implausible in numerous other ways:

- **Double counting of customers.** Plaintiff multiplies its alleged license fee by "1,275 of Defendants' customers" (Ex. A at 6), a number which Plaintiff obtained by "total[ing] up all of the entities that were produced in [Defendants'] lists." Dkt. 87 at 6:18–19. But Plaintiff fails to account for the fact that the same entities appear multiple times across those five lists.[5] Indeed, Plaintiff itself has acknowledged that "some of the entities on the lists appear to overlap." Dkt. 76 at 5. For example, the BBC appears nine times across all five lists. *See* Exs. 16–18; Exs. B–C. In other words, Plaintiff is double, quintuple, and even nonuple counting. No rational customer would have repeatedly bought a license to the same Videos from Plaintiff multiple times, let alone nine times. After de-duplicating, the correct number is cut in half: approximately 669 unique customers. Supp. Chase Decl. ¶ 7. But, as explained above, Plaintiff has made no showing that it would have sold licenses to *any* RNMI customers, let alone 1,275 or even 669.

- **Inflated license fee.** Plaintiff inexplicably assigns a $1,000 license fee to "each of Plaintiff's six Videos" (Ex. A at 6), but the record evidence shows that Clement's agent, Live Storms Media, managed to sell only one of those six Videos and did so for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 56 ¶ 88; Dkt. 75 ¶ 88. Of that ▮▮▮, Clement's share was only ▮▮▮. *Id.*; *see Encyc. Brown Prods., Ltd. v. Home Box Off., Inc.*, 25 F. Supp. 2d 395, 400–01 (S.D.N.Y. 1998) (lost sales require proof of plaintiff's lost profits). Further, the ▮▮▮ was paid not to Clement, but to non-party WxChasing. There is no evidence of Clement receiving payment from WxChasing, and even if he did, WxChasing has operating expenses that would further reduce any profits of Clement. Dkt. 81 at 5–6. In sum, assigning the inflated $1,000 figure to all six Videos is not grounded in the evidence.[6] Instead, at most, ▮▮▮ per Video is the correct amount.

Although Defendants maintain that the Court should preclude or grant summary judgment as to Plaintiff's entire claim for actual damages in light of Plaintiff's failure to show that it lost *any*

---

[5] Many RNMI customers freely obtain the same content from RNMI multiple times or by multiple methods because they have "all you can eat" subscriptions. Dkt. 75 ¶ 4.

[6] Plaintiff apparently chose $1,000 because the six Videos were "*offered* for licensing *between $500 to $1,000* per video." Dkt. 87 at 6:23–24 (emphases added). But it makes no sense to value *all six* Videos at $1,000 each, when three were offered for $500, one was offered for $750, and only one was actually offered for $1,000 (Plaintiff did not produce the offer price for the last Video at issue). Ex. D. In any event, the true market value of the Videos is reflected in Plaintiff's actual *sales*, not a higher offer that failed to secure any buyers. *See Schonfeld v. Hilliard*, 218 F.3d 164, 178 (2d Cir. 2000) ("[I]t is well-established that a recent sale price for the subject asset … is the 'best evidence' of its market value."). The only sales were for ▮▮▮ for one Video, of which Clement's share was ▮▮▮. Exs. 21–22.

sales, in the alternative, the Court may impose a limit on Plaintiff's damages claim "up to the amount … supported by the evidence in the record." *Madden v. DreamWorks, LLC*, 2009 WL 10706573, at *5 (E.D.N.Y. July 6, 2009).

If the Court is so inclined, it should, at a minimum, limit Plaintiff's lost sales to the small number of customers whom Clement has at one time shared with RNMI as per Plaintiff's own produced evidence. *Cf. Banff Ltd. v. Express, Inc.*, 921 F. Supp. 1065, 1068 (S.D.N.Y. 1995) (recognizing that it was "highly unlikely" that plaintiff would have made a sale to a purchaser who "had never done any business with" plaintiff). Based on the invoices that Plaintiff produced in this action, Clement and RNMI have, at one time or another, shared only ten (10) customers. Supp. Chase Decl. ¶ 8. Thus, 10 customers, multiplied by 6 Videos, multiplied by Clement's license fee portion of ███ (as explained above), yields a total of ███. If the Court is disinclined to summarily dismiss Plaintiff's entire actual-damages claim, ███ should be the maximum amount of lost sales that Plaintiff may be permitted to recover based on the record evidence.

### III.   STATUTORY DAMAGES ARE UNAVAILABLE FOR ONE VIDEO

In its disclosure, Plaintiff seeks statutory damages for "each of the seven infringed works." Ex. A at 6. However, a plaintiff is ineligible for statutory damages where "he had not registered his copyright within three months of his first 'publication' of his work or prior to the allegedly infringing use." *Davis*, 246 F.3d at 158 & n.1 (citing 17 U.S.C. § 412). Here, Plaintiff concedes that Video 3 was registered on March 14, 2023—over three months after publication on November 18, 2022, and after the alleged infringement in December 2022. Dkt. 74 ¶¶ 20–22; Dkt. 66-9. Therefore, Plaintiff cannot recover statutory damages for Video 3.

### CONCLUSION

The Court should grant Defendants' motion for sanctions and partial summary judgment.

Dated: May 2, 2025
New York, New York

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Jeremy A. Chase*
Jeremy A. Chase
Katherine M. Bolger
Raphael Holoszyc-Pimentel

1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
jeremychase@dwt.com
katebolger@dwt.com
rhp@dwt.com

*Attorneys for Defendants Reuters News & Media Inc. and Thomson Reuters U.S. LLC*