UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GLOBAL WEATHER PRODUCTIONS LLC,

                Plaintiff,

-against-

REUTERS NEWS & MEDIA LLC and
THOMSON REUTERS US LLC,

                Defendants.

24-cv-507 (AS)

OPINION AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

Two snowstorms hit the city of Buffalo within a span of six weeks in late 2022. During both storms, video journalist Michael Clement braved the icy conditions and captured footage of the record-breaking snow.

Plaintiff Global Weather LLC owns the rights to Clement's videos of these storms. Global Weather accuses defendants Reuters News & Media LLC (RNMI) and Thomson Reuters US LLC (TRUSL) of infringing its copyrights. Global Weather says that defendants used Global Weather's videos of the November 2022 storm to make and distribute video edits purporting to capture the December 2022 blizzard without first receiving the necessary go-ahead.

Both sides have moved for partial summary judgment. Global Weather says that it's beyond dispute that defendants are liable. In response, defendants concede liability as to RNMI but say that TRUSL played no role in circulating the videos. Defendants argue in their motion that Global Weather can't show any actual damages from the infringement; defendants have also cross-moved as to liability for TRUSL.

For the reasons provided below, Global Weather's motion is GRANTED in part and DENIED in part, and defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

This case begins on November 16, 2022. That day, seasoned video journalist Michael Clement, who "specializes in capturing natural disasters and weather storms," rushed to Buffalo so that he could capture footage of what he guessed would be a "historic lake effect event." *See* Dkt. 66 ¶¶ 4, 6–7. Clement guessed correctly. What unfolded over the next sixty hours was one of the biggest storms to hit New York in the state's history. *See id.* ¶¶ 9–10.

Venturing through the storm, Clement got his footage. *See id.* ¶¶ 10, 12. Clement then distributed his videos through his licensing agency, Live Storms Media. *See id.* ¶¶ 13–40. Live Storms Media also published some of these videos on YouTube with Clement's consent. *See id.*

On December 23, 2022, another storm—this one a blizzard—hit Buffalo. *See* Dkt. 61-48 at 76:17–77:4. This storm went through Christmas, lasting until December 26. *See id.* Again, Clement was on the scene to capture video footage of the blizzard. *See id.* at 77:11–19. And again, this blizzard was a record-breaker: it lasted seventy-two hours, "the longest duration blizzard ever reported in New York." *Id.* at 77:8–10.

On December 25, 2022, a videographer named Mark Morgan uploaded six videos of a snowstorm to Stringr, a video newsgathering platform. Dkt. 75 ¶¶ 6, 33. Stingr has a network of videographers who upload videos to the platform. The platform then licenses the uploaded videos to news outlets. *Id.* ¶ 7. Morgan labeled his videos "Winter Storm Elliot Hits Buffalo NY 2022" and described them as "a few short clips I was able to get while in Buffalo on Friday before I got stuck in a parking lot over night." *Id.* ¶ 34.

Unfortunately, there was little accurate about Morgan's representations. First, the videos that Morgan uploaded were of the November—not December—storm. *See id.* ¶ 85. Second, the videos that Morgan uploaded weren't Morgan's at all—they were Clement's. *See id.* ¶ 84.

Stringr has a provider agreement with RNMI. *See* Dkt. 61-1. Under that agreement, Stringr granted RNMI a broad license to use and distribute its content and provided RNMI with the representation and warranty that it had the rights to the videos on its platform, that the videos didn't violate anyone's copyright, and that the videos were accurate and truthful portrayals of the events they purported to depict. *See id.*

RNMI uses Stringr content as part of its Reuters Connect platform. *See* Dkt. 75 ¶ 3. On Reuters Connect, subscribers—other news organizations—can download content provided by RNMI and the contributors with whom it contracts. *See id.* RNMI's reliance on Stringr allows RNMI to provide Reuters Connect subscribers with content from places where there might not be Reuters journalists. *See id.* ¶ 8.

Two Reuters video producers used Morgan's videos from Stringr to cut video edits of the December storm. Both video edits were published on Reuters Connect. The first, published on December 26, was titled "Traffic chaos as historic snowfall blankets New York." *See* Dkt. 61-19 at PLA857–61. The second was called "Once-in-a-lifetime' blizzard kills at least 60 people nationwide" and was pushed out to Reuters Connect subscribers on December 27. *See id.* at PLA866.

Separately from Morgan, the Latin American News Agency (LANA) licensed video footage allegedly of the December 2022 storm from a media company called Angel Productions. *See* Dkt. 75 ¶ 47. LANA used the footage to create a third video edit. *See* Dkt. 61-15. But again, the footage was taken from Clement's videos of the November storm. Dkt. 75 ¶ 46. LANA uploaded the video edit to Reuters Connect on December 28, but the edit was neither distributed to nor downloaded by anyone. *See id.* ¶¶ 48–49. LANA's contributor agreement with Reuters affirms that LANA has the rights to the content it provides Reuters. *See* Dkt. 61-9.[1]

---

[1] This opinion uses "RNMI" or "TRUSL" where it is clear that an agreement or individual's affiliation is with those entities specifically, and "Reuters" where that general identifier is used.

Clement formed Global Weather in May 2023 to hold the copyrights for his various videos. *See* Dkt. 57-17 at 118:21–119:5; Dkt. 61-30. In June 2023, Clement assigned the copyrights of all his then-existing and future works to Global Weather. *See* Dkt. 61-31. He assigned the "rights, titles and interests to all intellectual property" held by him and "all causes of action accruing or occurring before or during the term of this Agreement, including the right to receive and retain any proceeds related thereto." *See* Dkt. 61-31 at 2. Clement also uses a separate company, WxChasing LLC, to license his videos. Dkt. 66 ¶ 5.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## DISCUSSION

### I. TRUSL is dismissed from this case.

Global Weather moves for partial summary judgment on liability. Defendants don't oppose the motion as to RNMI. *See* Dkt. 71 at 1. So the Court grants summary judgment on RNMI's liability.

Defendants, however, argue that TRUSL should be dismissed from this case because it's merely the parent company of RNMI. Because Global Weather hasn't attempted to pierce the corporate veil, defendants say that TRUSL can't be held liable for RNMI's actions. To make this point, defendants point to a declaration from Christopher Lee, associate general counsel at Reuters and an officer of RNMI, *see* Dkt. 60 ¶ 1, and deposition testimony from Justine Flatley, a director of partnerships at RNMI, *see* Dkt. 57-15 at 16:5–8.

Lee states in his declaration that TRUSL doesn't operate reutersconnect.com or the Reuters Connect platform. Dkt. 60 ¶ 6. Lee then goes on to say that TRUSL isn't a counterparty to the agreement between RNMI and Stringr, that TRUSL isn't a counterparty to the contributor agreement between Reuters and LANA, and that "TRUSL did not license, distribute, display, or otherwise use the Videos at issue in this case." *Id.* ¶¶ 7–10. Finally, Lee affirms that TRUSL does not employ any of the individuals "who were involved in producing, editing, licensing, distributing, displaying, or otherwise using the Videos at issue in this case." *Id.* ¶ 11. Flatley testified that RNMI operates reutersconnect.com. *See* Dkt. 57-15 at 19:15–17.

Global Weather responds that TRUSL was directly involved in the videos' circulation. It accuses defendants of relying on self-serving declarations and deposition testimony to evade liability. Then Global Weather throws the book at defendants. It says: 1) defendants admitted joint

liability in their answer; 2) "Thomson Reuters" is listed as the owner of the "Story Copyright" of the video edits on Reuters Connect; 3) defendants jointly responded to discovery demands and interrogatories; 4) defendants' produced customer list doesn't distinguish between RNMI and TRUSL; and 5) various agreements and the email addresses of the employees involved refer to "Reuters," "Thomson Reuters," or the "Reuters Group" rather than RNMI specifically.

    First, the Court considers Lee's declaration. Global Weather relies on *Deebs v. Alstom Transportation, Inc.*, 346 F. App'x 654 (2d Cir. 2009), in which the Second Circuit held that "self-serving testimony" that was "speculative and[] subjective" is insufficient to defeat summary judgment. *Id.* at 656 (citation omitted). But Lee's declaration isn't speculative—it's a sworn declaration about a company's structure and operations made by someone with personal knowledge of the facts, similar to those that courts have considered on summary judgment countless times. Global Weather's efforts to characterize Lee's declaration as "self-serving" simply because it supports defendants' position doesn't make it so. *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998) (rejecting opposing party's attempt to characterize affidavit as "self-serving" and "conclusory"). Moreover, defendants don't rely solely on Lee's declaration—they also point to Flatley's deposition testimony, which further supports TRUSL's lack of involvement in the infringement. *See DoubleLine Cap. LP v. Construtora Norberto Odebrecht, S.A.*, 2025 WL 1951864, at *12 (S.D.N.Y. July 16, 2025).

    Against Lee's declaration and Flatley's testimony, Global Weather doesn't rustle up enough evidence in its favor to create a genuine dispute of material fact as to TRUSL's liability. As for defendants' answer, which purportedly conceded their joint liability, the portion on which Global Weather relies was framed in the disjunctive. Defendants' answer said, "Defendants deny the allegations in Paragraph 4, except admit that [TRUSL] *and/or* its affiliates operate a website at www.reutersconnect.com." Dkt. 30 ¶ 4 (emphasis added). Defendants weren't admitting that TRUSL itself operates the website, rather than one of the company's affiliates.

    The rest of Global Weather's evidence of TRUSL's liability is really the absence of evidence. *See Montessi v. Am. Airlines, Inc.*, 935 F. Supp. 482, 485 (S.D.N.Y. 1996) ("[A] party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995))). Defendants' choice to respond jointly to discovery demands and interrogatories reveals little about TRUSL's underlying involvement in the infringement. That "Thomson Reuters" is listed as the "Story Copyright" owner of the video edits doesn't suffice to show TRUSL's involvement— "Thomson Reuters" is a trade name for many entities within the Thomson Reuters umbrella. *See* Dkt. 81 at 14 n.9. Similarly, using "Reuters" or the "Reuters Group" in contributor agreements or the "Thomson Reuters" domain name in employee email addresses doesn't create a fact issue as

4

to whether TRUSL was specifically involved in the infringement.[2] And finally, the download and distribution lists that defendants produced don't evidence TRUSL's involvement. *See* Dkt. 57-4; Dkt. 57-5; Dkt. 57-6. These lists just name the Reuters customers who received or downloaded the video edits at issue. *See id.* That the lists don't separate out customers by Reuters entity doesn't imply that any customer listed is a TRUSL customer. Ultimately, Global Weather presents no evidence that TRUSL was itself involved with the infringement that took place; the best it has is speculation. So without a viable veil-piercing case—which Global Weather admits it didn't mount—TRUSL can't be held liable.

## II. The Court grants summary judgment on actual damages.

Defendants first ask the Court to preclude Global Weather's request for actual damages based on its failure to comply with Federal Rule of Civil Procedure 26(a)(1)(A)(iii). Both sides acknowledge that defendants did not receive any damages computation from Global Weather until April 21, 2025, after the close of discovery and when the Court held a summary-judgment hearing in this case. But under Rule 26(a)(1)(A)(iii), parties are required, "without awaiting a discovery request," to provide to the other parties "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Under Rule 37(c), if a party fails to provide the information required by Rule 26(a), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

While the Court would be within its discretion to preclude Global Weather's damages computation based the failure to produce it during discovery, there's a more fundamental issue: the computation lacks any support in the record. *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001) ("The law therefore exacts that the amount of damages may not be based on 'undue speculation.'" (citation omitted)).

Global Weather claims damages of $7,650,000, "based on loss of Plaintiff's actual licensing ($1,000 per video for each of Plaintiff's six videos used in Defendants' video edits) to 1,275 of Defendants' customers." Dkt. 94-1 at 7. Defendants give a host of reasons why this computation is unmoored from the evidence, including the lack of evidence of significant licensing by Clement or his licensing company of the November or December 2022 storm footage; the fact that the videos at issue were from the November storm, not the December one that cultivated—mistakenly as it turned out—customers' interest; the lack of Clement's and/or Global Weather's relationship with all but ten of RNMI's customers; and Clement's own testimony that it would be "impossible to say" what the lost sales of even the December 2022 blizzard footage would be, that he "would

---

[2] Global Weather says that one of the videographers involved testified that she was employed by Thomson Reuters. As with its characterization of defendants' answer, Global Weather misstates things. The videographer testified, "I am employed by Reuters. Reuters is part of Thomson Reuters, bu[t] it is a huge organization." Dkt. 61-44 at 13:8–10.

5

be speculating," and he "d[oesn't] know the opportunities" that were lost. Dkt. 57-17 at 234:12; 237:15; 239:10–11. At his deposition, Clement testified that perhaps fifteen or twenty licenses would have been struck, *id.* at 236:20–25, far short of the $1,000-per-video license to 1,275 customers for the older November 2022 footage that Global Weather predicts. *See* Dkt. 91 at 3–6. There are other problems that defendants note as well, including Global Weather's "double, quintuple, and even nonuple" counting of alleged licensees from defendants' lists, and its assigning a $1,000 license fee to each listed entity when the sole license Clement's agent struck for one of the November videos was $500. *Id.* at 5. A jury could not rationally award a full thousand dollars each for 1,275 customers—totaling $7,650,000—based on this record. Global Weather is looking for a windfall, but that's not what the law allows.

To the extent that Global Weather suggests that *Agence France Presse v. Morel*, 2014 WL 3963124 (S.D.N.Y. Aug. 13, 2014) justifies this ask, there are several differences between this case and that one. First, in that case the infringed pictures were from an earthquake that had just happened. Here, while customers may have downloaded Clement's videos thinking they were from the December storm that everyone was interested in, they weren't. For this reason, and unlike *Agence France*, using the full number of downloads in a case of mistaken identity makes no sense. Global Weather confirms it is *not* seeking damages for any losses pertaining to Clement's actual December 2022 footage. Dkt. 76 at 8. Second, in *Agence France* there was evidence that the *defendants* had themselves sold licenses of the images in question for up to $1,450 each, 2014 WL 3963124, at *13, but in this case, the damages calculation is based on Clement's offers. On that score, defendants observe that only one offer was accepted, for $500, and apparently only $175 of that sum ended up in Clement's pocket after licensing fees and expenses. *See* Dkt. 91 at 4. Third, in *Agence France*, the plaintiff's estimation of the number of downloads "appear[ed] to understate the true number of downloads." 2014 WL 3963124, at *14. Here, despite the fact that Global Weather complains that customers are missing from defendants' lists, defendants contend that Global Weather is counting customers multiple times to get to its 1,275 figure. Adding to this confusion, defendants observe that neither Global Weather nor its predecessor-in-interest, Clement, themselves licensed videos to customers. Rather they worked through a separate company, WxChasing. While this alone might not foreclose an otherwise reasonable estimate of damages, it raises the issue of what amounts Global Weather or Clement would themselves receive taking into account licensing or other fees they would ordinarily incur. Global Weather hasn't addressed this issue at all, nor does Global Weather present any alternative theory for actual damages. For these reasons, *Agence France* doesn't justify the presentation at trial of a damages calculation that a jury could not adopt. *See e.g.*, *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 108 (2d Cir. 1999) ("[I]n the absence of convincing evidence as to the volume of sales that plaintiff would have obtained but for the infringement, the measure of lost profits may be rejected as too speculative." (citation omitted)).

That's not to say that Global Weather couldn't have pursued a claim for any actual damages in this case. Even the defendants allow that damages of $10,500 might be justified based on the evidence in the record. *See* Dkt. 91 at 5–6. Global Weather could have, for example, presented market-based evidence or expert testimony to demonstrate the fair value of the November videos

6

and how that value was diminished by defendants' infringement. But Global Weather presented no such evidence, and no alternative theory of damages, instead hoping that the Court would let it press its luck at trial for a lottery win. On these facts, summary judgment on actual damages is plainly warranted.

### III.   The court denies summary judgment on statutory damages except as to Video 3.

Defendants next say that any statutory damages should be limited because the record establishes that defendants acted innocently, not willfully. "A copyright infringement is 'willful' . . . if plaintiff shows '(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of "reckless disregard" for, or "willful blindness" to, the copyright holder's rights.'" *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 435 (S.D.N.Y. 2018) (quoting *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)). "Generally speaking, summary judgment is not a tool well suited to determining willfulness . . . ." *Close-Up Int'l, Inc. v. Berov*, 382 F. App'x 113, 117 (2d Cir. 2010).

Defendants say that RNMI reasonably relied on the representations and warranties made by Stringr and LANA. Against this, Global Weather points to a series of red flags that it says should have put RNMI on notice about the infringement, including that RNMI's employees had to correct the date and location of the videos Morgan uploaded; that an advertisement played at the end of one of the videos; and that there was audio of someone breathing on the drone footage uploaded. *See* Dkt. 61-43 at 77:3–78:7; Dkt. 61-44 at 83:16–20; Dkt. 61-47 at 107:15–108:25. Moreover, RNMI is in a business that involves considerable interaction with copyright laws and kept the videos up even after Global Weather informed it of the infringement. *See Otto*, 345 F. Supp. 3d at 436 (discussing cases where courts have found willful infringement based on defendants' experience with copyright laws and defendants' "continu[ing] [of] their infringement even 'after receiving a specific warning'" (citation omitted)). Drawing all inferences in Global Weather's favor, "that is enough to make summary judgment on the issue of willfulness inappropriate." *Island Software*, 413 F.3d at 264.

Finally, defendants point out that Global Weather is ineligible for statutory damages as to Video 3. A plaintiff cannot receive statutory damages "under 17 U.S.C. § 504(c) . . . [if] he ha[s] not registered his copyright within three months of his first 'publication' of his work or prior to the allegedly infringing use." *On Davis*, 246 F.3d at 158 & n.1. Here, Global Weather concedes that Video 3 was registered on March 14, 2023. Dkt. 66-9; Dkt. 74 ¶¶ 20–22. That is more than three months after the work's publication on November 18, 2022, *see* Dkt. 66-9, and after the infringement in December 2022. So the Court grants defendants' motion as to Video 3.

## CONCLUSION

For the reasons above, defendants' motion for summary judgment is GRANTED in part and DENIED in part. Similarly, Global Weather's motion for summary judgment is GRANTED in part and DENIED in part.

By September 26, 2025, the parties shall meet, confer, and submit their weeks of trial availability in January or February 2026.

The Clerk of Court is directed to terminate Dkts. 54 and 62.

SO ORDERED.

Dated: September 16, 2025
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge